UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYDIA LOPEZ,
Plaintiff,

v.

INSTITUTE ON AGING, INC., et al.,
Defendants.

Case No. 26-cv-05497-LJC

**ORDER RESOLVING LOPEZ'S MOTION TO REMAND AND IOA'S MOTION TO DISMISS**

Re: ECF Nos. 14, 19

The parties in this action brought two motions that were heard by the Court collectively on August 31, 2026. Plaintiff Lydia Lopez (Lopez) moves to remand this action back to California State Court. ECF No. 14. Defendants Institute on Aging, Institute on Aging - Northern California, LLC, and/or Institute on Aging - Southern California, LLC (collectively, IOA) moves to dismiss Lopez's First Amended Complaint. ECF No. 19. The parties have briefed the dispute, and presented a factual record that includes, among other things, the Collective Bargaining Agreements covering Lopez's employment with IOA. Having considered the parties' briefing, the factual record, oral argument, and the applicable authorities, the Court determines that Lopez's first cause of action is subject to LMRA preemption but also subject to dismissal due to her failure to exhaust her CBAs' grievance procedure and REMANDS this action with Lopez's surviving state claims to San Francisco Superior Court. Accordingly, the Court GRANTS Lopez's Motion to Remand and GRANTS IN PART IOA's Motion to Dismiss for the reasons discussed below.

## I. BACKGROUND

Lopez is a California resident who has worked for IOA in the County of San Francisco, California, as an hourly, non-exempt Home Care Aide since approximately 2015. ECF No. 11 (FAC) at ¶ 15. Lopez alleges she was typically scheduled to work four days each week and in

United States District Court
Northern District of California

United States District Court
Northern District of California

excess of ten hours each day. *Id.* Lopez alleges she has not been assigned any further work since January 2026 and has been constructively discharged. *Id.* Lopez and the purported Class work as home health aides who monitor aging patients in the patients' homes. *Id.* at ¶ 17. Lopez proposes the following Class definition:

> All persons who worked for any Defendant in California as an hourly, non exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class.

*Id.* at ¶ 24.

Lopez alleges that, throughout the statutory period, IOA failed to pay her for all hours worked (including minimum wages), failed to provide her with uninterrupted meal periods, failed to authorize and permit her to take uninterrupted rest periods, failed to timely pay all final wages to her when IOA terminated her employment, and failed to furnish accurate wage statements to her. *Id.* at ¶ 16. Lopez alleges that her experience working for IOA was "typical" and "illustrative." *Id.*

Lopez alleges that off-the clock work for IOA was "routine" and "occurred virtually every day." *Id.* at ¶ 17. Lopez further alleges that IOA maintained a policy and practice of not paying for all hours worked. *Id.* In support, Lopez alleges that IOA failed to incorporate all remuneration when calculating the correct meal break premium rate of pay, rest break premium rate of pay, and sick day rate of pay. *Id.* Additionally, Lopez alleges that she and the Class were required to log into a cell phone application or call the IOA office to clock in for their shifts, resulting in several minutes of off-the-clock work while utilizing IOA's timekeeping system. *Id.* Lopez further alleges that she and the Class were instructed to clock out after twelve hours, regardless of the scheduled shift, which discouraged them from logging all actual hours worked. *Id.* Lopez further alleges that, while clocked out, she and the purported Class were required to monitor patients during their entire time at the patients' homes, required to respond to work requests from supervisors, and were not paid for travel time between clients. *Id.* Lopez identifies the period of December 8–25, 2023 as a representative example of these occurrences. *Id.*

Lopez alleges that IOA failed to provide her and the Class with legally compliant meal periods throughout the statutory period. *Id.* at ¶ 18. For example, Lopez alleges that IOA required

her and the Class to "work in excess of five consecutive hours a day without providing 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work" or without compensation. *Id.* For examples of interruptions, Lopez alleges that she and the Class "were responsible for monitoring patients during the entire time they were at the patients' homes" with no coverage. *Id.* Lopez further alleges that she and the Class were required to prioritize urgent work tasks before starting their meal periods or during their meal periods, resulting in late, shortened, or interrupted meal periods." *Id.* Lopez also alleges that she and the Class were not allowed to leave the patients alone or leave the patients' homes during the meal periods, resulting in meal periods that were on-duty and without compensation. *Id.* Lopez further alleges that, when she and the Class "worked shifts that were over 10 hours in length, [IOA] failed to provide a second meal period altogether." *Id.* Lopez further alleges that IOA did not adequately inform her and the Class of their meal break rights. *Id.* Lopez identifies the period of December 8–25, 2023 as a representative example of these occurrences. *Id.*

Lopez alleges that IOA failed to authorize and permit Lopez and the Class to take timely and duty-free rest periods by requiring them "to work in excess of four consecutive hours a day without [IOA] authorizing and permitting them to take a net 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction thereof)" or without compensation. *Id.* at ¶ 19. For example, Lopez alleges that she and the Class were responsible for monitoring patients during the entire time they were at the patients' homes and were not allowed to leave the patients alone or leave the patients' homes during their shifts, including during purported rest breaks. *Id.* Furthermore, Lopez alleges that she and the Class were "required to prioritize work tasks over taking rest periods and were often required to forgo their rest periods" without coverage. *Id.* Lopez also alleges IOA's inadequate practices and policies resulted in on-duty rest breaks without compensation. *Id.* Lopez further alleges that IOA did not maintain adequate practices and policies in keeping accurate records of employee work periods and verification of rest breaks. *Id.* Lopez further alleges that IOA failed to adequately inform her and the Class of their right to take a rest period. *Id.* Lopez identifies the period of December 8–25, 2023 as a representative example of these occurrences. *Id.*

United States District Court
Northern District of California

Lopez alleges that IOA "willfully failed and refused to timely pay [Lopez] and the Class at the conclusion of their employment all wages for all minimum wages, meal period premium wages, and rest period premium wages." *Id.* at ¶ 20. Lopez alleges, for example, that IOA failed to pay her and the Class their final paychecks immediately upon termination. *Id.* Lopez alleges that she was constructively discharged in January 2026 and did not receive all wages owed within the required time period. *Id.*

Lopez also alleges that IOA failed to furnish her and the Class with "accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned." *Id.* at ¶ 21. For examples of inaccuracies, Lopez alleges that the wage statements IOA provided did not include the "correct hours worked, correct wages earned for hours worked, correct wages for meal periods that were not provided in accordance with California law, correct wages for rest periods that were not authorized and permitted to take in accordance with California law, and [IOA]'s address)[]." *Id.*

In support of damages, Lopez alleges that, due to IOA's violation of California Labor Code § 226(a), she and the purported Class were: (a) led to "believe that they were not entitled to be paid minimum wages, meal period premium wages, and rest period premium wages to which they were entitled, even though they were entitled"; (b) led to "believe that they had been paid the minimum, meal period premium, and rest period premium wages, even though had not been"; (c) led to "believe they were not entitled to be paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they were;" (d) led to "believe they had been paid minimum, meal period premium, and rest period premium wages at the correct California rate even though they had not been;" (e) hindered [] from determining the amounts of minimum, meal period premium, and rest period premium owed to them"; (f) "caused [] to have to perform mathematical computations to determine the amounts of wages owed to them, computations they would not have to make if the wage statements contained the required accurate information"; (g) "caused [] to lose entitlement and/or accrual of the full amount of Social Security, disability, unemployment, and other governmental benefits"; and (h) "paid less than the wages and wage rates to which they were entitled" because "the wage statements inaccurately

understated the wages, hours, and wages rates to which [Lopez] and the Class were entitled." *Id.*

## II. PROCEDURAL HISTORY

Lopez filed a putative class action in San Francisco Superior Court against IOA on April 28, 2026, alleging eight causes of action. ECF No. 1-1. Lopez's original causes of action were:

> (1) Failure to Pay Minimum Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197);
> (2) Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 1194 and 1198);
> (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512);
> (4) Failure to Authorize and Permit Rest Breaks (Cal. Lab. Code §§ 226.7;
> (5) Failure to Indemnify Necessary Business Expenses (Cal. Lab. Code §2802);
> (6) Failure to Timely Pay Final Wages at Termination (Ca. Lab. Code §§ 201–03);
> (7) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); and
> (8) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.).

*Id.*

On June 8, 2026, IOA removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, on the grounds that Lopez's wage and hour claims are preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 141 *et seq.* ECF No. 1 at 2. The parties consented to magistrate jurisdiction. ECF Nos. 9, 12.

On June 15, 2026, IOA moved to dismiss Lopez's complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) or, in the alternative, to strike the class claims pursuant to Rule 12(F). ECF No. 7 at 2. IOA's first motion to dismiss argued that Lopez's eight causes of action were preempted under Section 301 of the LMRA and that Lopez failed to exhaust her administrative remedies under an applicable Collective Bargaining Agreement (CBA). *Id.* at 2–5.

Instead of opposing the first motion to dismiss, Lopez filed the FAC on June 26, 2026. ECF No. 11. The FAC added factual allegations and voluntarily dismissed two causes of action: (1) Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 1194 and 1198 and (2) Failure to Indemnify Necessary Business Expenses (Cal. Lab. Code §2802). *Id.*; ECF No. 14 at 4. The FAC thus alleges the following causes of action:

> (1) Failure to Pay Minimum Wages (Cal. Lab. Code §§ 204, 1194,

1194.2, and 1197);
(2) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512);
(3) Failure to Authorize and Permit Rest Breaks (Cal. Lab. Code §§ 226.7;
(4) Failure to Timely Pay Final Wages at Termination (Ca. Lab. Code §§ 201–03);
(5) Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); and
(6) Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.).

*See generally*, ECF No. 11.

On July 7, 2026, Lopez filed a Motion to Remand this action back to California state court, pursuant to 28 U.S.C.A. § 1441(a), on the grounds that the FAC alleges only violations of California's Labor Code and Unfair Competition Law and does not allege any violation of the CBA, nor does it seek to enforce any contractual right under the CBA or federal law. ECF No. 14. IOA filed its Opposition on July 21, 2026, ECF No. 18, and Lopez filed her Reply on July 28, 2026, ECF No. 21.

Lopez attached a declaration to her Reply (to the Motion for Remand) stating that her duties as a Home Care Aid included a distribution of 30% housekeeping duties and 70% caregiving duties, with housekeeping duties including "general cleaning of the home, sweeping, vacuuming, dusting, throwing away garbage, sanitizing surfaces, washing dishes, making beds, as well as laundry" and caretaking duties including "dressing, bathing, feeding, and changing diapers (if applicable), as well as general supervision of the patient." ECF No. 21-1. On August 5, 2026, IOA filed an objection to paragraphs 3–7 of Lopez's declaration on the grounds that they are an "[i]mproper attempt to offer new and untimely evidence" and, regarding paragraphs 6–7, on the grounds that they are "[u]nsupported, [s]peculative, [c]onclusory, and [l]ack[] [f]oundation." ECF No. 22.

On July 27, 2026, IOA filed its Motion to Dismiss the six causes of action in Lopez's FAC on the grounds that the claims are preempted under section 301 of the LMRA, do not allege exhaustion of the CBA grievance procedure, and do not state a claim upon which relief can be granted; in the alternative, IOA seeks to dismiss or strike the class claims as implausibly broad and unsupported by the facts. ECF No. 19. Lopez filed her Opposition to the Motion to Dismiss on August 10, 2026, ECF No. 23, and IOA filed its Reply on August 17, 2026, ECF No. 24.

United States District Court
Northern District of California

IOA attached to its second Motion to Dismiss a Request for Judicial Notice (RJN) of two CBAs entered by and between SEIU Local 2015 and IOA, effective June 1, 2020 until October 31, 2023, ECF No. 19-1, Ex. A, and entered by and between SEIU Local 2015 and IOA, effective November 1, 2023 until October 31, 2026, ECF No. 19-1, Ex. B. Lopez did not file an opposition to IOA's RJN.

The Court heard oral argument on both the Motion to Remand and the Motion to Dismiss on August 31, 2026. ECF No. 27.

## III. MOTION TO REMAND

Lopez asks the Court to review the Motion to Remand before the Motion to Dismiss, ECF No. 23 at 5, and IOA has not expressly opposed, *see generally* ECF No. 24. The Court agrees it is most prudent to resolve the threshold jurisdictional issue before turning to the exhaustion requirement and the sufficiency of the pleadings to state a claim.

### A. Legal Standard

Federal courts may only resolve cases falling within their limited subject matter jurisdiction. *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476 at *4 (N.D. Cal. Dec. 30, 2019). A defendant can generally remove a case from state court to federal court if the case falls within federal subject matter jurisdiction such that it could have been filed in federal court, subject to applicable procedural rules and restrictions. *See generally* 28 U.S.C. § 1441. The removing defendant has the burden of showing that removal is proper. *See, e.g.*, *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The Ninth Circuit has recognized a "strong presumption against removal," such that any doubts as to whether a case is properly removed must be resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992) (citation and internal quotation marks omitted); *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

The Motion to Remand here turns, in large part, on whether the claims are preempted under section 301 of the LMRA.

> Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law

> complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court.

*Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations omitted) (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). There are limits, however, to the scope of LMRA preemption. "[D]efensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim." *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (9th Cir. 2002).

Courts use a two-step test, often referred to as the *Burnside* steps, to determine whether a claim is preempted:

> First, we ask whether the asserted cause of action involves a right that exists solely as a result of the CBA. The essential inquiry is this: Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there. But if not, we proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply "looking to" versus "interpreting" the CBA. We have stressed that "interpretation" is construed narrowly in this context. At this second step of the analysis, claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms. Accordingly, a state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA.

*Curtis*, 913 F.3d at 1152–53 (cleaned up); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007).

**B. Discussion**

**1. Failure to Pay Minimum Wages**

Lopez's first cause of action is for failure to pay minimum wages pursuant to Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197. ECF. No. 14 at 4; FAC ¶¶ 31–40. Lopez argues that this cause of action is based entirely on California state law and not dependent on the interpretation of any CBA, and thus not required to satisfy the CBA's grievance procedure. IOA argues that Lopez's first cause of action is preempted by section 301 of the LMRA.

Section 301 of the LMRA preempts state law claims asserting rights that arise from a CBA, such that a complaint bringing such claims is construed as invoking section 301 and may be removed to federal court on that basis. *See Curtis*, 913 F.3d at 1152. IOA is correct that Lopez's

first cause of action alleges more than merely that she was paid less than the minimum wage. ECF No. 18 at 8. Lopez claims that IOA "systematically failed and refused to pay [Lopez] and the Class all such wages due, and ***failed to pay those wages twice a month***." FAC at ¶ 39 (emphasis added). IOA argues that preemption is warranted under California Labor Code section 204(c), which provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees." Cal. Lab. Code § 204(c).

Lopez argues in her Reply that the Court should ignore section 204(c) because IOA did not list that specific subsection in its Notice of Removal. ECF No. 21 at 4. However, IOA *did* identify Lopez's section 204 "failure to pay timely wages" claim as a preempted derivative claim in its Notice of Removal. *See* ECF No. 1 at 11. Lopez cites no authority for her argument that, because IOA did not specifically cite Subsection 204(c), IOA has waived its LMRA preemption argument. When Lopez's counsel were asked for supporting authority at the hearing, none were provided.

Lopez's attempt to distinguish this case's pay schedule from those in *Carrillo*, *Johnson*, and *Tolentino* is likewise unpersuasive. ECF No. 21 at 5. Here, the Court must turn to the CBA and IOA's Request for Judicial Notice to interpret a disputed term: "bi-weekly." Section 204(a) sets forth that wages are:

> due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Cal. Lab. Code § 204(a).

Lopez argues that "the CBA's provision requiring biweekly payment is consistent with these statutory requirements and does not establish a separate or alternative payment arrangement that displaces section 204(a)." ECF No. 21 at 5. IOA argues that the pay schedules are different because the CBAs "provide that '[a]ll earned pay shall be paid on a bi-weekly basis' for wages earned during the two-week period immediately preceding the pay period." ECF No. 18 at 10.

United States District Court
Northern District of California

The Court finds these are substantively different pay schedules. IOA elucidates the difference most clearly in its Reply to the Motion to Dismiss: "A biweekly cycle uses successive fourteen-day periods that move relative to calendar-month boundaries and produces 26 paychecks per year; a semi-monthly cycle uses fixed halves of each month and produces 24 pay periods." ECF No. 24 at 11; *see also Ariola v. Raytheon CA Techs. Corp.*, 2023 WL 5764296, at *8-9 (C.D. Cal. Sept. 6, 2023) ("While similar, a biweekly arrangement ensures that twice a year employees receive three payments in a month.").

It follows that, because the pay schedule under the CBA meaningfully differs from the section 204(a) default schedule, Lopez's first cause of action must arise from violations under the CBA and is preempted under *Burnside* step one. But even assuming the first cause of action was not preempted under *Burnside* step one, the Court would nonetheless need to interpret the CBA's in resolving the disputed terms: "bi-weekly" vs. semi-monthly. Thus, Lopez's first cause of action would be preempted under both *Burnside* steps.

For the foregoing reasons, the Court holds that Lopez's first cause of action is preempted under *Burnside* step one because the claim under Labor Code section 204(c) gives effect to the CBA's different pay schedule and section 301 of the LMRA preempts such a claim that is grounded in an obligation established by the CBA. Lopez's Motion to Remand with respect to the first cause of action is DENIED.

**2. Failure to Provide Meal and Rest Periods**

Lopez's second and third causes of action are claims for failure to provide meal periods, pursuant to Cal. Lab. Code §§ 226.7 and 512, and failure to authorize and permit rest breaks, pursuant to Cal. Lab. Code §§ 226.7. *See generally* ECF No. 11. Lopez asserts that her meal and rest break claims do not depend on rights created by the CBA and instead seek to enforce "minimum workplace protections established by California law that exist regardless of whether a collective bargaining agreement is in place." ECF No. 14 at 8. IOA argues in response that Lopez's position as a Home Care Aid is exempted under a "personal attendant" exemption to the statutory default break rules, and thus her meal and rest break claims (second and third causes of action) are preempted as "CBA rights, not rights conferred by California law." ECF. No. 18 at 12.

Wage orders issued by the Industrial Welfare Commission of California regulate the hours, wages and working conditions of many California employees. *Roman v. Jan-Pro Franchising International, Inc.*, 342 F.R.D. 274, 288-89 (N.D. Cal. 2022). Relevant to this case, Wage Order No. 15 applies to "all persons employed in household occupations," Cal. Code Regs., tit. 8, § 11150, and defines "personal attendants" as:

> any person employed by a private householder or any third party employer recognized in the healthcare industry to work in a private household, to supervise, feed, or dress a child or a person who by reason of advanced age, physical disability, or mental deficiency needs supervision.

Cal. Code Regs., tit. 8, § 11150(2)(J). Wage Order No. 15 expressly excludes "personal attendants" from almost all of its provisions: "Except as provided in sections 1, 2, 4, 10, and 15, the provisions of this Order shall not apply to personal attendants." Cal. Code Regs., tit. 8, § 11150(1)(B). As IOA observes, Sections 11 and 12 are the meal and rest period provisions—and these sections are not listed in Section 1(B)'s limited set of provisions that apply to personal attendants. Thus, Section 1(B) exempts personal attendants from the provisions "providing meal and rest periods." *Liday v. Sims*, 40 Cal. App. 5th 359, 371-372 (2019).

The parties do not dispute that personal attendants are exempted from the statutory meal and rest breaks. ECF No. 21 at 3; ECF No. 18 at 12. Instead, the parties disagree about whether Lopez qualifies as a "personal attendant" under the statutory definition. ECF No. 21 at 3. Lopez contends that she is not a personal attendant within the meaning of the applicable California law. "The status of 'personal attendant' shall apply when no significant amount of work other than the foregoing is required." Cal. Code Regs., tit. 8, § 11150(2)(J). Lopez cites the Department of Labor Standards Enforcement's interpretation of "significant amount" here, asserting that it means "more than twenty percent of the employee's total hours worked." ECF No. 21 at 3 (citing DLSE Opinion Letter No. 2005.11.23 at 2, n.3); *see also Chavez v. RSCR California, Inc.*, No. 2:18-CV-03137-JAM-AC, 2019 WL 1367812 at *3 (E.D. Cal. Mar. 26, 2019). Lopez attests in her declaration filed with her Reply in support of her Motion to Remand that "approximately 30%" of her total hours worked consisted of "housekeeping duties," including "general cleaning of the home, sweeping, vacuuming, dusting, taking out the garbage, sanitizing surfaces, washing dishes,



United States District Court
Northern District of California

making beds, as well as laundry." ECF No. 21-1 ¶¶ 4, 6.

IOA asks the Court to decline consideration of Lopez's declaration on the grounds that it improperly attempts to offer new and untimely evidence, and that it is unsupported, speculative, conclusory, and lacks foundation. ECF No. 22. It is true that neither the FAC nor the Motion to Remand mentions housekeeping duties, a 30% work distribution thereof, or Wage Order No. 15's "personal attendant" exemption for statutory meal and rest breaks. However, neither does IOA's Notice of Removal.

To start, IOA relies on *Miller v. Grgurich*, 763 F.2d 372 (9th Cir. 1985) to support its contention that "in ruling on a motion to remand, the court determines removability from the complaint as it existed at the time of removal, together with the removal notice." ECF No. 22 at 2. *Miller*, however, makes clear that the district court is not limited to the complaint when determining subject matter jurisdiction, and it makes no reference to the removal notice. 763 F.2d at 373. *Miller*'s acknowledgement of the rule that diversity or federal question jurisdiction must exist at the time of the petition for removal does not establish a requirement that the district court may only rely on the complaint and notice of removal to determine subject matter jurisdiction. Rather, the *Miller* court found "[o]n the face of the pleadings in this case, a substantial question concerning the plaintiff's citizenship at the time of removal," remanding to the district court to determine whether diversity had been established and instructing the case be remanded to state court if the requisite diversity was lacking. *Id.* Here, on a Motion for Remand, where it is not obvious from the complaint or the notice of removal whether Lopez met the definition of a personal attendant, such that her claim is a federally preempted claim under the LMRA, it is appropriate for the Court to consider material beyond the complaint. *See Gaus v. Miles*, 980 F.2d 564, 566-57 (9th Cir. 1992) (if "removal jurisdiction" is "unclear" from the complaint, facts must support jurisdiction). There is a distinction between assessing the existence of federal subject matter jurisdiction at the time of removal and limiting the Court's assessment to the complaint, removal notice, and anything else filed on the docket at the time of removal. *Gaus* is not so restrictive. IOA has not pointed to any authority establishing that the Court should not consider facts in determining whether this case was removable on the basis of LMRA preemption. Lopez's

declaration attests to certain relevant facts, and it would appear to be an error to limit the Court's consideration of its subject matter jurisdiction to the complaint and notice of removal.

IOA next argues that "a court may not rely on new reply evidence without giving the opposing party an opportunity to respond." ECF No. 22 at 3 (citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010). Though this argument is stronger, *Graves* is inapposite as it addressed waiver of a new argument, made on appeal, that was raised for the first time in a reply brief before the Ninth Circuit. Here, though we are involved in litigation at the district court level, district courts may apply a similar principle. *Visier, Inc. v. iCIMS, Inc.*, Case No. 24-cv-07544, 2025 WL 589036, *2 (N.D. Cal. Feb. 24, 2025) (on a motion to dismiss for *forum non conveniens* or, in the alternative, transfer, sustaining an objection to evidence that could have been included in a party's original motion, but was withheld until the reply brief). The Northern District of California's Civil Local Rules anticipate this type of situation where new evidence is attached to a reply brief: "Any reply to an opposition may include affidavits or declarations," N.D. Cal. Civ. L.R. 7-3(c), and "[i]f new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence," N.D. Cal. Civ. L.R. 7-3(d)(1). Here, IOA filed its objection, submitting its response. ECF No. 22. Furthermore, in her Response to IOA's Motion to Dismiss, Lopez cited her declaration and argued that she did not qualify as a personal attendant. ECF No. 23 at 8-9. IOA countered this evidence in its Reply brief. ECF No. 24 at 13.

The Ninth Circuit has also allowed the introduction of evidence outside the pleadings when analyzing a factual challenge to removal jurisdiction in analogous Class Action Fairness Act (CAFA) cases. *See Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020) (allowing a plaintiff to contest the amount in controversy for CAFA removal by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations). After a removing defendant alleges that the Court has jurisdiction in the notice of removal, the plaintiff can contest removal "by making either a 'facial' or a 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter*, 974 F.3d at 964). "A factual attack 'contests the truth of the . . . allegations' themselves." *Harris*, 980 F.3d at 699 (alteration in original) (internal citation omitted). Here, "the burden is on the defendant to show, by a

preponderance of the evidence," that the Court has jurisdiction. *Id.* Although a plaintiff may rely on evidence to mount a factual attack, "[a] factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700. Conversely, where a plaintiff "d[oes] not challenge the rationality, or the factual basis, of [a defendant's] assertions" and "argue[s] only that [defendant] must support its assertion with competent proof," that challenge is a "facial attack, rather than a factual attack." *See Salter*, 974 F.3d at 964.

IOA objects to paragraphs 3–7 of Lopez's declaration as an "[i]mproper attempt to offer new and untimely evidence." ECF No. 22. Based on the foregoing, the Court finds the declaration relevant and admissible in determining the jurisdictional preemption issue, and IOA has had a reasonable opportunity address the issue of whether Lopez was a personal attendant in its briefing and upon questioning at the hearing. Importantly, IOA, on a motion to remand, "bears the burden of actually proving the facts to support jurisdiction." *Gaus*, 980 F.2d at 566-67 (addressing the burden to establish the damages amount for purposes of diversity jurisdiction). IOA raised the personal attendant exemption in its opposition to Lopez's Motion to Remand but declined to present evidence in support of its position. IOA's objection is overruled.

IOA's remaining objection is lodged only with respect to paragraphs 6 and 7 of the declaration, asserting that Lopez's housekeeping duties "accounted for approximately 30% of the total hours," ECF No. 21-1 at ¶ 6, and that her "caregiving duties accounted for approximately 70% of the total hours," ECF No. 21-1 ¶ 7. *See also* ECF No. 22 at 5–8. IOA asserts that these paragraphs are "[u]nsupported, [s]peculative, [c]onclusory, and [l]ack[] [f]oundation." The basis for this objection is that the declaration "identifies no work schedule, time records, patient assignment, or any other basis from which those percentages were derived" and does not "state whether the estimate applies to each shift, each patient, the entire employment period, or some subset." *Id.* IOA thus responds to Lopez's factual attack with essentially a facial retort, asking for further support of her claim that her work distribution was a 30/70 split. The Court overrules IOA's objection, as it has access to material concerning Lopez's schedule and housekeeping duties, or at least the company's policies or practices or other facts, but has not endeavored to

present any facts, or make any representations regarding her or other similar employees' though it bears the burden of establishing federal jurisdiction.

The Court finds that Lopez's sworn statement that 30% of her Home Aide responsibilities included housekeeping duties is an estimate that a person can plausibly give about their work duty distribution. Lopez is not required to prove her work distribution at this early state of the litigation. At the hearing, IOA was aware of no evidence to the contrary. The Court finds that IOA has not shown that Wage Order No. 15's "personal attendant" exemption applies to Lopez at this pleading stage.

Turning back to the broader issue of preemption, Lopez seeks to invoke her rights to meal and rest breaks under the California Labor Code, not the CBAs. "[T]he mere fact that a broad contractual protection . . . may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 816 (C.D. Cal. 2020).

For the foregoing reasons, the Court finds the "personal attendant" exemption inapplicable here, and thus Lopez's second and third causes of action are based on her statutory rights, not the CBA. The second and third causes of action are not preempted at *Burnside* step one. Although unnecessary to consider, at *Burnside* step two, IOA has not identified any "active dispute over 'the meaning of contract terms'" that requires any interpretation of the CBAs. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1089 (9th Cir. 2025). Thus, the Court finds no need to interpret the CBAs with respect to Lopez's meal and rest break claims.

**3. Remaining Claims**

With respect to Lopez's fourth, fifth, and sixth claims, IOA does not oppose remand by arguing that the federal courts have original jurisdiction over these claims pursuant to the LMRA. ECF No. 18 at 15. Instead, IOA argues that the Court should exercise supplemental jurisdiction pursuant to 18 U.S.C. § 1367(a) over these remaining claims because they are "sufficiently intertwined" with Lopez's preempted claims, provided that the Court has agreed that at least one of the first three causes of action is subject to LMRA preemption. *Id.* As discussed above, the Court has found only that the first cause of action is subject to LMRA preemption as a federal

United States District Court
Northern District of California

claim. Yet, that federal claim is dismissed for the reasons explained below, because Lopez has failed to exhaust the required grievance procedure. Insofar as supplemental jurisdiction over the remaining claims is contingent on the Court's original jurisdiction over the second or third causes of action, the second and third causes of action are not subject to LMRA preemption because they are grounded in state law. Thus, because the federal claim in this case is subject to dismissal, the Court declines to exercise supplemental jurisdiction over these remaining three claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted), *superseded on other grounds* as stated in *Royal Canin*, 604 U.S. at 41 ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.").

On a motion for remand, "the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566. As IOA has not established federal question jurisdiction with respect to any of Plaintiff's remaining causes of action, and diversity jurisdiction has not been asserted, Lopez's Motion for Remand is GRANTED.

## IV. MOTION TO DISMISS

IOA moves to dismiss all six of Lopez's causes of action. IOA argues that Lopez's claims that are subject to LMRA preemption must be dismissed for failure to exhaust the grievance procedure. In addition, IOA argues that the claims are insufficiently pled and should be dismissed for failure to state a claim.

### A. Legal Standard

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation and internal quotation marks omitted). A complaint generally must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court reviewing a motion under Rule 12(b)(6) must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). "Threadbare

recitals of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal conclusions" or "mere conclusory statements." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6) unless it is clear the complaint cannot be saved by any amendment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**B. Discussion**

IOA seeks dismissal of all of Lopez's LMRA preempted claims for failure to exhaust the CBA grievance procedures. *See Del Costello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983). As discussed, *supra* section III.B.1., Lopez's first cause of action for failure to timely pay minimum wages is preempted under section 301 of the LMRA. Lopez's second and third causes of action for failure to pay meal and rest period wages are not preempted, *supra*, section III.B.2, and IOA has not asserted that the fourth, fifth, and sixth causes of action are LMRA preempted or that these three claims otherwise present federal questions. Given that this Court has determined that the sole federal claim in this case is the first cause of action, it begins its analysis of IOA's Motion to Dismiss by addressing IOA's argument that Lopez's sole federal claim should be dismissed for failure to exhaust the CBA's grievance procedure, and then addresses the remaining five state causes of action.

**1. Lopez's Cause of Action for Failure to Pay Minimum Wages**

IOA argues that Lopez's first cause of action, once preempted by section 301 of the LMRA, should be dismissed for failure to exhaust the CBA's grievance procedure and is otherwise insufficiently pled pursuant to Rule 12(b)(6). IOA further argues that the claim should be dismissed with prejudice because Lopez had notice and opportunity to amend the complaint and cure this defect—but did not. For the following reasons, the Court agrees that Lopez failed to

exhaust the grievance procedure as required.

Under federal labor law, employees must comply with the grievance and arbitration procedures set forth in the collective bargaining agreement(s) before bringing a claim under section 301 of the LMRA. *See Del Costello*, 462 U.S. at 163 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("individual employees must attempt use of the contract grievance procedure agreed upon by the employer and union as the mode of redress."); *see also Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 219 (1985). Where a plaintiff's claims are preempted by section 301 of the LMRA and the plaintiff failed to exhaust administrative remedies under the CBA before filing suit, the claims are subject to dismissal. *See Stewart v. Leland Stanford Jr. Univ.*, 2006 WL 889437, at *4–5 (N.D. Cal. April 5, 2006) (dismissing section 301 preempted claims where plaintiff failed to exhaust administrative remedies under the CBA before filing the lawsuit) (citing *Republic Steel Corp.*, 379 U.S. at 652); *see also Ortiz v. Permanente Med. Grp., Inc.*, 2013 WL 1748049, at *3 (N.D. Cal. Apr. 23, 2013) (holding that an employee's failure to exhaust is fatal to stating a claim arising under section 301); *see also Padilla v. Western Traffic Control, Inc.*, 2025 WL 2961801, at *5 (N.D. Cal. Oct. 20, 2025) (dismissing claims where plaintiffs failed to allege they followed the required grievance procedures under the CBA).

IOA argues that, here, like in *Stewart*, *Ortiz*, and *Padilla*, Article 26 of the governing CBAs provides a procedure for administering and processing grievances which leads to mediation. *See* ECF No. 19 at 18; ECF No. 19-1 at 46–49, 94–97. As IOA correctly observes, the FAC does not allege that Lopez presented any grievance, completed any step, requested union assistance, pursued mediation or arbitration, or obtained a final decision. ECF No. 19 at 18. Nor does the FAC allege that IOA repudiated the process, that the union acted arbitrarily, discriminatory, or in bad faith, or that use of the procedure would have been futile. *Id.* The FAC does not acknowledge the grievance procedures at all. *Id.*

Lopez effectively concedes that LMRA preemption makes or breaks her ability to state a section 204 claim. *See* ECF No. 23 at 12–13 ("Defendants' argument that Plaintiff was required to exhaust the CBA's grievance procedures fails for the same reason their preemption argument fails. . . The mere existence of grievance and arbitration procedures in the CBA does not require

United States District Court
Northern District of California

an employee to submit independent statutory claims to the contractual grievance process simply because the employe is covered by a CBA"). It follows that, if IOA's preemption argument succeeds, so too does its grievance procedure argument. Because Lopez's first cause of action is grounded on a contractual right established by the CBA, she is obligated to pursue the grievance procedure established therein. Besides arguing non-preemption, Lopez does not offer an alternative argument for why the grievance exhaustion does not defeat her section 204 claim.

Furthermore, Lopez has not suggested that she could amend her complaint to allege that she had, at the time that she filed the complaint and the case was removed, exhausted the grievance procedure with respect to the first cause of action. Lopez has already received notice of this pleading deficiency in IOA's original motion to dismiss, ECF No. 7 at 18, and had the opportunity to allege supporting facts in her FAC—but the FAC failed to cure the defect. Such a failure is a strong indication that Lopez has no additional facts to plead and that further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *Moran v. GMAC Mortg., LLC*, 2014 WL 3853833, at *11 (N.D. Cal. Aug. 5, 2014) (denying leave to amend "because Plaintiff has made no attempt to address the deficiencies identified in Defendants' original Motion to Dismiss."). At the hearing, counsel for Lopez was not aware of any facts that could support an argument that the grievance procedure has been satisfied. Amendment of Lopez's first cause of action would be futile.

For these reasons, having already found that Lopez's first cause of action is preempted, the Court now holds that the CBA's grievance procedures must be fulfilled as well. Because Lopez has neither alleged satisfaction of the grievance procedure, nor has she suggested that she could amend the complaint to state such facts—despite having the opportunity to do so—the Court GRANTS IOA's motion to dismiss with respect to the first cause of action WITH PREJUDICE. "Under Rule 12(b)(1), subject matter jurisdiction must exist at the time [Plaintiff] files [her] complaint." *Cook v. Soc. Sec. Admin.*, No. C 07-5085 RS, 2008 WL 2557761, at *1 (N.D. Cal. June 24, 2008) (citing *Morongo Band of Mission Indians v. California Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988).

The Court does not otherwise reach the merits of the Rule 12(b)(6) dispute with respect to

the first cause of action.

**2. Lopez's Causes of Action for Failure to Provide Meal and Rest Periods**

IOA argues that the second and third causes of action should be dismissed for failure to exhaust the grievance procedure discussed above and failure to state a claim under Rule 12(b)(6).

However, the second and third causes of action are not preempted and thus are not required to satisfy the grievance procedure. Moreover, the first cause of action is dismissed with prejudice, leaving no remaining federal claims to attach supplemental jurisdiction to. The Court declines to reach the merits of the second and third causes of action, having determined there is no subject matter jurisdiction over them. IOA remains free to argue to the San Francisco Superior Court that the CBA's grievance provision or arbitration of any of the remaining claims require dismissal. However, the Court expresses no opinion on the merits of such arguments.

IOA's Motion to Dismiss the second and third causes of action is therefore DENIED to the extent it seeks dismissal of the second and third causes of action based on preemption and grievance procedures.

**3. Lopez's Fourth, Fifth and Sixth Claims**

IOA has not argued that the fourth, fifth, and sixth claims are LMRA preempted and effectively concedes that they are state claims, but it argues that these claims are insufficiently pled and should be dismissed. ECF No. 19 at 23–26. Because, as explained above, the Court has declined to exercise supplemental jurisdiction over these claims, it declines to resolve the merits of these arguments.

## V. IOA'S REQUEST TO STRIKE CLASS CLAIMS

IOA moves, in the alternative, to strike Lopez's class claims pursuant to Rule 12(f) on the grounds they are not plausible and lack factual support beyond bare assertions. ECF No. 19 at 26. However, as described above, Lopez's first cause of action is dismissed with prejudice—taking out all class allegations that accompany it. This case, consisting of Lopez's remaining, non-preempted, state claims is remanded to the San Francisco Superior Court. Given the Court's lack of subject matter jurisdiction over the remaining claims in this action, the Court declines to rule on IOA's motion to strike the class claims.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Lopez's Motion to Remand and GRANTS IN PART IOA's Motion to Dismiss as follows:

Lopez's first cause of action is subject to LMRA preemption, but the federal claim is subject to dismissal for failure to allege exhaustion of the CBA's grievance process. Dismissal of this claim is with prejudice because Lopez has made it apparent that she cannot cure the defect by amending her pleadings to allege exhaustion of the grievance procedure at the time she filed the complaint. Lopez's second and third causes of action are not LMRA preempted claims, and therefore they are not subject to dismissal for failure to exhaust. Because none of the remaining causes of action are federal claims under the LMRA or any other federal provision, and the Court declines to exercise supplemental jurisdiction over these state claims. This action comprised of Lopez's five surviving state causes of action is REMANDED.

This order resolves Lopez's Motion to Remand, ECF No. 14, and IOA's Motion to Dismiss, ECF No. 19, and the motions shall be terminated on the docket.

The Clerk is instructed to remand the case to the California Superior Court for the County of San Francisco, where it was assigned case number CGC-26-636370, and to close the case on this Court's docket.

**IT IS SO ORDERED.**

Dated: October 19, 2026

LISA J. CISNEROS
United States Magistrate Judge